

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-20-00369-CV

**IN THE INTEREST OF L.M.H.** and J.R.H., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-01720
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Luz Elena D. Chapa, Justice
               Irene Rios, Justice

Delivered and Filed: January 13, 2021

AFFIRMED

Appellant ("Mother") appeals from the trial court's order terminating her parental rights to her children, L.M.H. and J.R.H.[1]  In a single issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  We affirm.

### BACKGROUND

On August 23, 2019, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate Mother's parental rights to L.M.H. and J.R.H.  On July 7, 2020, the trial court held a bench trial, at which Mother, the Department's caseworker, and the

---

[1] To protect the identities of the minor children in this appeal, we refer to appellant as "Mother" and to the children by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

children's court appointed advocate testified. At the time of trial, L.M.H. was ten, and J.R.H. was seven. Following trial, the trial court signed an order that terminated Mother's parental rights to her children. The trial court found three statutory grounds for termination: (1) that Mother constructively abandoned her children, (2) that she failed to comply with the provisions of a court order that established the actions necessary for her to obtain the return of her children, and (3) that she used a controlled substance in a manner that endangered the children's health or safety. *See id.* § 161.001(b)(1)(N), (O), (P). The trial court also found that termination was in the children's best interest. *See id.* § 161.001(b)(2). Mother appeals.

### STANDARD OF REVIEW

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited

in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## BEST INTEREST

In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in her children's best interest. There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Texas Family Code section 263.307(b). *See id.* § 263.307(b).

Our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Our concern is

whether the evidence, as a whole, is sufficient for the trial court to have formed a strong conviction or belief that termination of the parent-child relationship is in the best interest of the child. *Id.*

The record shows that Mother was fifteen and in foster care when she gave birth to L.M.H. in 2010. Mother was using marijuana, at the time, and the Department initiated a termination proceeding, which resulted in the father of L.M.H. losing his parental rights. In 2013, Mother gave birth to J.R.H., with a different alleged father.[2] In 2017, the Department initiated a second termination proceeding against Mother based upon concerns about domestic violence and Mother's marijuana use. According to the Department's caseworker, Mother admitted to marijuana use when the second case was pending. The record does not indicate when the second case closed.

In August 2019, the Department removed the children from Mother's care and initiated this, its third case against Mother, based upon concerns about Mother's use of marijuana, methamphetamine, and cocaine. The Department also had concerns about the children's medical neglect. Both children had numerous cavities, and J.R.H. had an eye condition, which had gone unaddressed and which required surgery. In addition, the Department was concerned about Mother's ability to properly supervise and manage the care of her children. According to the caseworker, the Department's concern existed because L.M.H. twice had been the victim of sexual abuse. On the first occasion, L.M.H. was in Mother's care.

Following the children's removal, the Department prepared a service plan for Mother, and the trial court ordered Mother's compliance with that plan. Mother was ordered to engage in individual counseling, complete a parenting class, cooperate in the preparation of an assessment for drug and alcohol dependency, comply with any recommendations following such assessment,

---

[2] In the instant case, the parental rights of J.R.H.'s alleged father were terminated by the trial court's order. The alleged father does not appeal.

and submit to drug tests upon the Department's requests. The Department placed the children in a foster home, where they remained through the time of trial.

The first *Holley* factor concerns the children's desires. *See Holley*, 544 S.W.2d at 372; *see also* TEX. FAM. CODE ANN. § 263.307(b)(5) (providing that a court may consider whether a child is fearful of living in or returning to the child's home). The caseworker testified that L.M.H. told her twice that she felt unsafe returning to Mother's home. J.R.H. never responded to the caseworker's inquiry about her desires.

The second *Holley* factor concerns the children's present and future emotional and physical needs. *See Holley*, 544 S.W.2d at 372. The children's dental and vision needs were met while in foster care, but, at the time of trial, J.R.H. suffered from a gastroenterological issue that required medication and continued physician's visits. J.R.H. also was in speech therapy. Both children required continuing counseling. L.M.H. had been reprimanded for watching sexually inappropriate videos at school, but her behavior had since improved through bi-monthly counseling. L.M.H. worked with her counselor on appropriate boundaries, adjustment disorder, and anxiety. J.R.H. worked with her counselor on addressing sexually inappropriate behavior.

The third *Holley* factor concerns any present or future emotional and physical danger to the children, and the fourth *Holley* factor concerns the parental abilities of the individuals seeking custody. *See id.* Mother's drug use impacts these factors and others. *See In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.) (a parent's drug use is relevant to multiple *Holley* factors). Drug use supports a finding that a parent engages in conduct that endangers the physical and emotional well-being of her children. *See In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). Drug use also tends to suggest inadequate parenting skills. *See In re D.D.M.*, No. 01-18-01033-CV, 2019 WL 2939259, at *7 (Tex. App.—Houston [1st Dist.]

July 9, 2019, no pet.) (mem. op.); *see also In re A.H.L.*, No. 01-16-00784-CV, 2017 WL 1149222, at *5 (Tex. App.—Houston [1st Dist.] Mar. 28, 2017, pet. denied) (mem. op.) (noting that a parent's drug use may indicate instability of the home because it exposes children to the possibility that a parent may be impaired or imprisoned).

In October 2019, Mother admitted to the caseworker that she used marijuana, and throughout the case, Mother failed to submit to required drug tests. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (explaining that a trial court could infer a parent's drug abuse from the parent's failure to submit to drug testing). Mother denied drug use other than marijuana and asserted that her failed drug tests resulted from her use of prescription medication. Mother also accused the caseworker of manipulating test results. Despite Mother's protestations, the trial court was free to disbelieve Mother's testimony in favor of the caseworker's testimony that Mother admitted to marijuana use, during this and the previous case, and failed to submit to required tests. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (appellate courts defer to the factfinder on witness credibility issues); *see also In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) ("A trier of fact may measure a parent's future conduct by his past conduct . . . ."). Likewise, the trial court was free to credit the caseworker's testimony that Mother was unsuccessfully discharged from drug treatment based on her lack of attendance and participation, although Mother denied these reasons for discharge.

The fifth *Holley* factor concerns the programs available to assist the individuals seeking custody. *See Holley*, 544 S.W.2d at 372. The caseworker testified that Mother failed to complete parenting classes and did not attend individual counseling. The caseworker also testified that Mother stated, in the month before trial, that she did not wish to continue working toward the

completion of her required services. *See In re J.M.T.*, 519 S.W.3d at 270 ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future.").

*Holley* factor six concerns the plans for the children by those seeking custody, and *Holley* factor seven concerns the stability of the home. *Holley*, 544 S.W.2d at 372. "A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination." *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). After removal, the children were placed in a foster home, and this placement was expected to lead to the children's adoption if Mother's parental rights were terminated. According to the caseworker, L.M.H. was thriving in foster care, and J.R.H. was doing well. The children's advocate testified that the children were flourishing in their placement. Both children were bonded to their caregivers, and their needs were met. The caseworker testified that Mother was living in a motel at the time of trial, and was unemployed. Although Mother testified that she had moved into a house with her paramour several weeks before trial and pursued governmental disability income, the trial court reasonably could have determined that Mother's failures to maintain stable housing until just before trial and her inability to obtain employment or another source of legal income subjected her children to a life of uncertainty and instability. *See In re K.J.G.*, 2019 WL 3937278, at *7 (such uncertainty and instability may endanger a child's physical and emotional well-being).

After viewing all of the evidence in the light most favorable to the trial court's best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. We further conclude that any disputed evidence, viewed in light of the entire

record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the children's best interest. *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## CONCLUSION

We affirm the trial court's order.

Rebeca C. Martinez, Chief Justice